# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| GREG PALAST and<br>HELEN BUTLER,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his<br>official capacity as Secretary of State<br>of the State of Georgia,[1]<br><br>    Defendant. | CIVIL ACTION FILE<br><br>NO. 1:18-CV-04809-ELR |

## DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia ("Defendant" or "Secretary"), by and through counsel, and respectfully files this Brief in Support of his Motion For Summary Judgment, showing the Court as follows:

## INTRODUCTION

In this lawsuit, Plaintiffs sought to compel production of certain documents it knew that Defendant did not possess and was under no obligation to maintain.

---

[1] Brad Raffensperger replaced Robyn A. Crittenden as the Secretary of State for the State of Georgia on or about January 14, 2019.

Specifically, Plaintiffs brought a single count under the National Voter Registration Act ("NVRA") to compel the production of the 2016 and 2017 "Crosscheck Lists," which are comparisons of the Georgia voter registration list to the lists of other participating states for the purpose of identifying potential duplicate entries.  The Kansas Secretary of State created the Crosscheck Lists using information provided by many states, including Georgia, through the various secretaries of state.  Georgia's participation in the Crosscheck Program flowed only one way: Georgia provided information to the Kansas Secretary of State, but never used the Crosscheck Lists to perform maintenance on Georgia's voter registration database or to remove individuals from Georgia's voter rolls.  Plaintiffs were well aware prior to filing this lawsuit that Defendant did not use the Crosscheck Lists for list maintenance and did not have the requested documents.

Prior to the filing of this lawsuit, Defendant informed Plaintiffs that, because it does not use the Crosscheck Lists for voter registration database maintenance, it did not keep nor have in its possession the 2016 and 2017 Crosscheck Lists.  Undeterred, Plaintiffs filed suit seeking to compel the Crosscheck Lists anyway, out of some misguided belief that Georgia did possess the requested lists.  Six months later, Plaintiffs have conducted no formal discovery or done anything to

substantiate their erroneous theory.  Therefore, Defendant is entitled to judgment in his favor as a matter of law.

## FACTS

On or about January 14, 2013, the Georgia Secretary of State, executed a Memorandum of Understanding ("MOU") with the chief election officials of 19 other states to share voter registration data between the various states.  Defendant's Statement of Material Facts to Which There is No Genuine Issue to be Tried ("SOMF") ¶ 1.  Pursuant to the MOU, Georgia agreed to send its voter registration rolls to the office of the Kansas Secretary of State to compare with those of other states to search for duplicate entries. SOMF ¶ 2.  On or about January 23, 2013, the Secretary submitted the MOU for preclearance under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973. SOMF ¶ 3.  The request made plainly clear that Georgia was not going to use the Crosscheck List information for its voter roll maintenance program.  SOMF ¶ 4.  Consequently, and just over a month later, the U.S. Department of Justice determined that preclearance under Section 5 was unnecessary as the MOU does not affect voting in the State of Georgia. SOMF ¶ 5.

Consistent with its representation to the Justice Department, Georgia does not now, nor has it ever, used the information gathered by the Kansas Secretary of State pursuant to the MOU to remove registrations from the Georgia voter database

or for any list maintenance process whatsoever, including sending any confirmation notices. SOMF ¶ 6.  As such, Georgia does not possess or maintain the 2016 and 2017 lists requested by Plaintiff. SOMF ¶ 7.

On or about June 12, 2018, counsel for Plaintiffs submitted a request to the Georgia Secretary of State's office under the National Voter Registration Act, 52 U.S.C. § 20507, to obtain the Crosscheck Lists produced by the Kansas Secretary of State. SOMF ¶ 8.  On or about September 5, 2018, the Georgia Secretary of State's office responded to Plaintiffs' June 12, 2018 letter and confirmed that "Georgia has not used data or matches received from the Interstate Crosscheck Program to remove or otherwise change the status of voter registrations.  To date, [Georgia's] involvement has been limited to including our data in the Interstate Crosscheck Program.  [Georgia] did not participate at all this year (2018)." SOMF ¶ 9.  Beginning in February of 2017 and continuing to the present, Georgia has not participated in any way in the Crosscheck Program. SOMF ¶ 10.

On or about September 27, 2018, counsel for Plaintiffs responded and again requested copies of the Crosscheck Lists, apparently under the mistaken belief that Defendant may have the documents even if he did not use them. SOMF ¶ 11.  A week later, the Georgia Secretary of State's office responded to Plaintiffs' September 27, 2018 letter.  SOMF ¶ 12.  Once again, the Secretary reiterated that

"Georgia does not use and has not ever used Crosscheck data for list maintenance or any voter registration purpose whatsoever" and thus was "under no obligation to retain that data pursuant to the NVRA." SOMF ¶ 12.  The Secretary of State's office further confirmed that "[w]e have performed a diligent search to ensure that we do not have the 2016 and 2017 lists provided by the Crosscheck program, and we do not have them." SOMF ¶ 13.

Undeterred, four days later, counsel for Plaintiffs sent yet another letter to the Georgia Secretary of State's office again requesting the 2016 and 2017 Crosscheck Lists despite the Georgia Secretary of State's office's confirmation that it did not possess them.  SOMF ¶ 14.  Roughly one month later, Plaintiffs filed this lawsuit alleging a single count of violation of the National Voter Registration Act, citing Defendant's alleged failure to produce the Crosscheck Lists as the sole grounds for their complaint. (*See* Doc. 1 at ¶¶ 76-78.)

## ARGUMENT AND CITATION TO AUTHORITY

### I. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) authorizes summary judgment when "there is no genuine dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is

appropriate. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Allen v. Bd. of Public Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007). The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir.1990)). "Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e).

**II.     Plaintiffs' Claims Should Be Dismissed Because Defendant Has Not Violated The NVRA By Not Producing the Crosscheck Lists.**

Discovery has closed, and there is simply no evidence to support Plaintiff's baseless theory that the Secretary has the documents that form the basis of Plaintiffs' complaint. This case has run its course and judgment should be entered in favor of Defendant.

### A. Defendant does not have the Crosscheck Lists sought by Plaintiffs.

Plaintiffs have alleged a single violation the NVRA against Defendant on the alleged basis that he failed "to provide full response to Plaintiffs' request for public disclosure of the Crosscheck lists" after being given 90 days' notice. (Doc. 1 at ¶ 77.) As Plaintiffs were informed prior to filing this lawsuit, Defendant does not have the lists sought by Plaintiffs. *See* SOMF ¶¶ 7, 12-13. Moreover, Defendant is under no obligation to maintain them under the NVRA.

The NVRA provides that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the <u>implementation of programs and activities</u> conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1) (emphasis added). As stated in Georgia's VRA Section 5 preclearance letter sent to the U.S. Department of Justice, Georgia "is not using the information provided by the Kansas Secretary of State to either challenge or remove registrations" and Georgia's participation was and is for the "sole purpose [of] increas[ing] the universe of registrant's names in the database <u>by the other states</u>." Declaration of Ryan Germany, Exhibit B at 2 (emphasis added). Plaintiffs have had that letter since at least October 4, 2018. Thus, they have known that the

Crosscheck Lists requested by Plaintiffs have no bearing on the "<u>implementation</u> of programs and activities" affecting Georgia's voter rolls, and Georgia is under no obligation to maintain them.  52 U.S.C. § 20507(i)(1) (emphasis added); *see also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1338 (N.D. Ga. 2016) (records required to be kept under the NVRA "must relate to fulfilling, performing, carrying out, or putting into effect by means of a definite plan or procedure (1) systems or (2) specific actions to ensure that <u>the State's</u> official list of individuals entitled to vote is current and accurate.") (emphasis added).

Plaintiffs brought this lawsuit anyway.  Now, after having conducted no formal discovery, Plaintiffs cannot prove their theory for the simple reason that Defendant is not in possession of the Crosscheck Lists they requested, nor is he required to maintain them under the NVRA.  As such, Defendant is entitled to summary judgment.

### B. Plaintiffs cannot show a question of material fact exists as to whether Defendant possesses the 2016 and 2017 Crosscheck Lists.

Plaintiffs have conducted no formal discovery in this case.  As such, the bare allegations of Plaintiffs' Complaint remain the only support for their theory that – despite all evidence to the contrary – Defendant *must* possess the 2016 and 2017 Crosscheck Lists.  These allegations are insufficient to survive a motion for summary judgment.

First, Plaintiffs allege that Karen Handel, Georgia's Secretary of State from January 2007 until January 2010, stated in an interview with Plaintiff Palast that Georgia had "used Crosscheck to make sure illegal voters were not on our rolls." [Doc. 1 at ¶ 64.]  Even assuming this statement was made – which Plaintiffs have not established – it is non-testimonial and has no impact on this case.  As stated above, Georgia's participation in the Crosscheck Program did not begin until January 2013 when the Secretary of State's office signed the MOU – three years after Secretary Handel left office. SOMF ¶ 1; *see also* [Doc. 1 at ¶ 66].  Defendant cannot speculate as to why Secretary Handel made the statement – if she in fact ever did – but such is of no consequence.

Secretary Handel did not serve as Secretary of State during any portion of Georgia's participation in the Crosscheck Program and, therefore, she is not in a position to provide any evidence as to whether or how the Crosscheck Lists were used (which they were not).  Her alleged statement cannot establish a question of material fact to preclude summary judgment, particularly when Plaintiffs conducted no discovery to attempt to verify whether or not the alleged remark is in fact correct.

Second, Plaintiffs allege that an unnamed individual on the 2013 Crosscheck List "contacted Plaintiff Palast and told him that he voted in 2008 and 2012 for

President Obama" but had his voter registration cancelled.  [Doc. 1 at ¶ 67.] Plaintiffs go on to theorize – again without offering evidence to support that the alleged incident ever occurred – that "the only reasonable conclusion is that the voter was sent a confirmation postcard only because he appeared on the 2013 Crosscheck list." [*Id.*]  This is mere speculation, and "'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion.  Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995) (alteration in original)).

Regardless of what occurred with this unnamed individual, if anything, Defendant has established that any alleged cancellation cannot be the result of Georgia's use of the Crosscheck Lists because no such use occurs.  *See supra* Section II.A.  Put simply, Plaintiffs' presumption that cancellation pursuant to the Crosscheck Lists is "the only reasonable explanation" amounts to an unfounded *res ipsa loquitur* argument that cannot establish a question of material fact to preclude summary judgment.  Summary judgment should, therefore, be granted in Defendant's favor and this case dismissed.  *See Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995) ("The non-moving party cannot rely solely on its pleadings; it

must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations and quotation omitted).

### III. No Other Allegation of Plaintiffs Does or Can Form The Basis of a Cause of Action Under The NVRA.

Plaintiffs have at times requested additional documents relating to Georgia's voter registration and election process both before and during this litigation. Specifically, on or around September 27, 2018, Plaintiffs first requested all confirmation notices sent to Georgia voters in 2016 and 2017. SOMF ¶ 11. During the course of this litigation, Plaintiffs revised these requests to seek a list of individuals who received confirmation notices going back to 2013. SOMF ¶ 16.

Although these requests are not part of the allegations of Plaintiffs' complaint, Defendant has nevertheless provided the information sought by Plaintiffs as part of Defendant's ongoing efforts to provide clear and accurate information to the public regarding Georgia's election process. SOMF ¶ 17-18. To the extent that Plaintiffs may attempt to argue to the contrary, Defendant shows the Court that these additional requests do not and cannot form an alleged basis of any cause of action stated against Defendant under the NVRA.

### A. Plaintiffs have not complied with the NVRA's notice provisions regarding their requests for documents other than the Crosscheck Lists.

The NVRA makes clear that pre-litigation notice is required before filing suit based on an alleged violation of the statute. 52 U.S.C. § 20510(b)(1). An aggrieved party may only file suit "[i]f the violation is not corrected within 90 days after receipt of a notice under paragraph (1)." 52 U.S.C. § 20510(b)(2). "No standing is therefore conferred if no proper notice is given, since the 90–day period never runs." *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F. Supp. 2d 1320, 1335 (N.D. Ga. 2012).

Here, Plaintiffs additional requests for information and documents were first sent on September 27, 2018 – less than 30 days before Plaintiffs filed this lawsuit on October 17, 2018. Plaintiffs' prior requests – regarding the 2016 and 2017 Crosscheck Lists and a list of individuals whose registrations had been cancelled or changed to inactive in 2016 and 2017 – were fulfilled, to the extent Defendant could do so, on September 5, 2018. Declaration of Ryan Germany, Exhibit E; *see also* [Doc. 1 at ¶ 29]. Plaintiffs eventually revised their requests to seek confirmation notice information going back to 2013. Such documents do not fall, at least in part, within the scope of the NVRA's preservation requirement. *See* 52 U.S.C. § 20507(i)(1) (documents are to be maintained for two years). Regardless,

Plaintiffs never provided notice that they intended to file suit based on these additional requests – nor could they, given the timing and evolving nature of the requests – and thus these requests cannot form the basis of any cause of action in this lawsuit. *See, e.g.*, *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014) ("[N]otice [under the NVRA] is mandatory.").

### B. Defendant has provided the information sought by Plaintiffs.

Although Plaintiffs' requests for information regarding the confirmation notices were outside the scope of this lawsuit, Defendant nevertheless fulfilled them to the extent he could do so. On or about March 18, 2019, Defendant provided Plaintiffs with spreadsheets of confirmation notices sent by the Secretary of State's office from 2013 through 2018. SOMF ¶ 17. These reports identified, each person who was sent a confirmation notice, when the notice was sent; the type of notice provided; the current status of the registration; the last date the individual voted; and the individual's response to the confirmation notice, if any. Defendant further responded to Plaintiffs' follow up questions – sent after the discovery period had ended – clarifying any issues regarding the documents provided. SOMF ¶ 18.

In short, Defendant has provided all the documents and information in his possession requested by Plaintiffs both before and during this lawsuit.

Accordingly, even if Plaintiffs were to attempt to bring a claim based on something other than the 2016 and 2017 Crosscheck Lists – which they have not – such would necessarily fail. There has been no violation of the NVRA, and Plaintiffs' lawsuit should be dismissed.

## **CONCLUSION**

This lawsuit was filed by Plaintiffs to compel production of documents it knew Defendant did not have. Defendant has gone above and beyond his obligations under the NVRA in a good faith effort to provide Plaintiffs, to the extent possible, the information they seek. This matter has dragged on long enough. For the reasons stated herein, Plaintiffs cannot show a violation under the NVRA and Defendant's Motion for Summary Judgment should be granted.

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 8th day of May, 2019.

>*/s/ Josh Belinfante*
>Josh Belinfante
>Georgia Bar No. 047399
>jbelinfante@robbinsfirm.com
>Vincent R. Russo
>Georgia Bar No. 242628
>vrusso@robbinsfirm.com
>Brian E. Lake
>Georgia Bar No. 575966
>blake@robbinsfirm.com
>Robbins Ross Alloy Belinfante Littlefield LLC
>500 14th Street, N.W.
>Atlanta, GA 30318
>Telephone:  (678) 701-9381
>Facsimile:   (404) 856-3250
>
>*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed the within and foregoing **DEFENDANT'S BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF electronic filing system which will automatically send counsel of record e-mail notification of such filing.

> G. Brian Spears
> 1126 Ponce de Leon Avenue
> Atlanta, Georgia 30306
> bspears@mindspring.com
>
> Jeanne Mirer
> Mirer, Mazzocchi & Julien PLLC
> 150 Broadway, 12th Floor
> New York, New York 10038

This 8th day of May, 2019.

> */s/ Josh Belinfante*
> Josh Belinfante