IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREG PALAST and HELEN BUTLER,

    Plaintiffs,

v.

BRIAN KEMP, *in his official capacity as Secretary of State of the State of Georgia*,

    Defendant.

1:18-CV-04809-ELR

**O R D E R**

Presently before the Court is Defendant Brian Kemp's Motion for Summary Judgment. [Doc. 17]. For the reasons below, the Court denies Defendant's motion.

## I. Background[1]

This case arises from an alleged violation of the National Voter Registration Act of 1983 ("NVRA"), which requires public disclosure of "all records concerning the implementation of programs and activities conducted for the purpose of ensuring

---

[1] All facts noted herein are undisputed unless otherwise indicated.

the accuracy and currency of official lists of eligible voters."[2] 52 U.S.C.S. § 20507(i) (2019); see generally Compl. [Doc. 1-2]. Plaintiffs, George Palast, an international investigative journalist, and Helen Butler, a civil and human rights activist, allege that such records include the records pertaining to the Interstate Voter Registration Crosscheck lists from 2016 and 2017. Compl. ¶ 23.

As it relates to these Crosscheck lists, the Georgia Secretary of State ("SOS") executed a Memorandum of Understanding for Interstate Voter Registration Data Comparison ("MOU") with the officials of nineteen (19) other states. Def.'s Statement of Material Facts ¶ 1 [Doc. 17-2] ("Def.'s SOMF"). The general purpose of this effort was to share voter registration data between the various states. Id.

Pursuant to the MOU, Georgia agreed to send its voter registration rolls to the office of the Kansas Secretary of State to compare with those of other states to search for duplicate entries.[3] Id. ¶ 2. The MOU was submitted by the governor to the U.S. Department of Justice ("USDOJ") for preclearance under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. §1973. Id. ¶ 3. On or about February 28, 2013, the

---

[2] The NVRA was passed to "increase the number of eligible citizens who register to vote" and to "enhance the participation of eligible citizens as voters" in federal elections. 52 U.S.C. § 20501(b). The NVRA seeks to simultaneously "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." Id.

[3] Former Kansas Secretary of State Ron Thornburg launched Crosscheck in 2005 to help Kansas and neighboring states compare voter data and detect double registrants. Moore v. Kobach, 259 F. Supp. 3d 1029, 1031 (D. Kan. Feb. 1, 2019). The Kansas Secretary of State's Office ("KSOS") administers Crosscheck by collecting voter registration information from participant states and cross-referencing lists for potential matches. Id. The KSOS then generates reports listing potential duplicate records for each participating state. Id.

USDOJ determined that based on the SOS's representations, preclearance was unnecessary as the MOU did not affect voting in the state of Georgia.[4] Id. ¶ 5.

On March 2, 2018, Plaintiffs submitted a demand for records under the Georgia Open Records Act to the SOS Elections Division. Compl. ¶ 21. Among other documents, Plaintiffs sought "original copies of the list provided by Crosscheck to the Elections Division showing the name, address, race, and birthdate of the voter with whom each Georgia voter was matched from another participating Crosscheck state." Id. ¶ 23.

The SOS provided none of the requested information at that time. Instead, its response outlined the cost of retrieving and redacting the records, and required that said costs be paid before the office would begin to retrieve and redact the requested records. Id. ¶ 24. In response to the SOS' letter, on or about June 12, 2018, Plaintiffs re-sent the request, but under the NVRA provisions. Def.'s SOMF ¶ 8. On or about September 5, 2018, the SOS responded to Plaintiffs' letter and indicated that "Georgia has not used data or matches received from the Interstate Crosscheck Program to remove or otherwise change the status of voter registrations." Id. ¶ 9. As such, the

---

[4] Plaintiffs dispute Defendant's representation to the USDOJ that participation in the Crosscheck program does not affect voting in Georgia. Pls.' Resp. to Def.'s SOMF ¶ 5 [Doc. 9]. Plaintiffs maintain that the SOS uses the Crosscheck lists to verify the address of those listed on the Crosscheck document and that these actions are consistent with list maintenance activities in accordance with the MOU. Id. Plaintiffs assert that some voters are subject to removal from active voter registration lists based on information gleaned from this verification process; therefore the Crosscheck program does affect voting in Georgia. See Compl.

3

Crosscheck lists requested were not provided. See id. ¶¶ 9, 11. The SOS did however, provide Plaintiffs with the 2016 and 2017 cancellation lists, and the 2016 and 2017 lists of those voters changed from active to inactive. Compl. ¶ 29.

On or about September 27, 2018, counsel for Plaintiffs sent the SOS an additional letter again requesting copies of the 2016 and 2017 Crosscheck lists. Def.'s SOMF ¶ 11. On or about October 4, 2018, the SOS responded to this letter once again indicating that "Georgia does not use and has never used Crosscheck data for list maintenance or any voter registration whatsoever" and thus "was under no obligation to retain that that data pursuant to the NVRA." Id. ¶ 12. The SOS' office further confirmed that "[w]e have performed a diligent search to ensure that we do not have the 2016 and 2017 lists provided by the Crosscheck program, and we do not have them." Id. ¶ 13.

On or about October 8, 2018, counsel for Plaintiffs sent a third letter to the SOS again requesting the Crosscheck lists despite the SOS' position that it does not possess them.[5] Id. ¶ 14. Nine days later, on or about October 17, 2018, Plaintiffs filed this action alleging a single count of violation of the NVRA. Compl. Defendant filed his answer on November 8, 2018 [Doc. 6], and after full discovery, Defendant also filed

---

[5] In this letter, Plaintiffs' counsel further requested that the SOS contact the KSOS's office to obtain the records if Defendant no longer had them. Decl. of Ryan Germany [Doc. 17-3] ("Germany Decl.").

4

the instant Motion for Summary Judgment. [Doc. 17]. This motion is now ripe for the Court's review.

## II. Legal Standard

The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249.

When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence

5

beyond the pleadings to show that there is a genuine issue for trial. Id. at 324-26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. Accordingly, the Court now turns to the merits of Defendant's motion.

## II. Discussion

As discussed, *supra*, Section 8(i)(1) of the NVRA mandates public disclosure of voter registration activities including the disclosure of records concerning the implementation of programs utilized for the purpose of ensuring the "accuracy and currency of list of eligible voters." 52 U.S.C.S. § 20507(i). Defendant contends that the Crosscheck list records do not fall within this category of documents and that even if it did, he does not have the requested records.[6] See generally Def.'s Br. in Supp. of Mot. Summ. J. [Doc. 17-1]. Plaintiffs disagree, contending that documents pertaining to voter list maintenance programs, namely, the Interstate Voter Crosscheck Program, are subject to public disclosure. See Compl. Plaintiffs further allege that Georgia's participation in Crosscheck disproportionately and adversely impacts voters of color, thereby undermining the integrity of the electoral process and Congress' intent when passing the NVRA. Id. ¶ 6.

---

[6] Defendant also addresses Plaintiffs' requests for confirmation notices in his brief; but Plaintiffs concede that Defendant's production of said notices are not part of this case. Pls.' Br. in Opp. to Def.'s Mot. Summ. J. at 17-18 [Doc. 18].

The crux of Defendant's argument in his Motion for Summary Judgment rests on his assertion that "Georgia is not using the information provided by the Kansas Secretary of State to either challenge or remove registrations" and that Georgia's participation was and is for the "sole purpose [of] increas[ing] the universe of registrant's names in the database by the other states." Germany Decl. at 10. Consequently, Defendant argues, that the Crosscheck lists requested by Plaintiffs have no bearing on the "implementation of programs and activities" affecting Georgia's voter rolls, and Georgia is under no obligation to maintain them. 52 U.S.C.S. § 20507(i)(1). As such, Defendant maintains that he is entitled to summary judgment as a matter of law because the plain meaning of the language in the NVRA does not encompass the Crosscheck lists (because the Georgia SOS never fully utilized them). Br. in Supp. of Mot. Summ. J. at 7-8. The Court disagrees, finding sufficient evidence in the record that would cast a genuine dispute as to the material facts on this issue.

While it is true that the record is devoid of any evidence that Defendant actually has the lists in its possession, the evidence in the record sufficiently calls into question whether Georgia utilized the lists as a tool to aid in determining or ensuring the "accuracy and currency of list of eligible voters" as contemplated by the NVRA.[7] 52

---

[7] Defendant appears to argue in part that because he does not have the lists, he is somehow relieved from the duty of providing them. See Br. in Supp. of Mot. Summ. J. at 2, 7-8. However, the record indicates that Plaintiffs made timely requests for the lists; and said lists are required to be maintained for two years. 52 U.S.C.S. § 20507(i)(1).

7

U.S.C.S. § 20507(i)(1). The plain language of the MOU entered into by the Georgia SOS states in pertinent part:

> Whereas the existence of centralized, interactive, computerized statewide voter registration lists facilitates the interoperability of such lists *for the purpose of comparison and cross checking registration records*, and; whereas the chief state election officials of the representative [s]tates desire to enter into this Memorandum . . . *to establish between them and between the [s]tates a process for each [s]tate to improve the accuracy of each [s]tate's voter registration list*; [n]ow therefore, the undersigned chief state election officials, in exchange for the mutual promises and commitments contained in this Memorandum of understanding, do hereby agree as follows: *the [s]tates agree to share voter registration information for the purposes of cross checking and identifying duplicate registrations and instances of multiple votes by the same individuals.*

MOU, Ex. A to Germany Decl. (emphasis added).

Defendant appears to contend that despite the language and express agreement outlined in the MOU, Georgia's SOS did not utilize the information generated by such lists to prompt any review of its voter registrants. Germany Decl. ¶ 4. Defendant further suggests that because the United States Department of Justice determined that preclearance for Georgia's participation in the program was unnecessary, this is an indication that the documents and records pertaining to the lists are not subject to public disclosure as required by the NVRA. Id. ¶ 7. However, this argument is unpersuasive when confronted with the express language of the MOU.

As the Court found in <u>Project Vote</u>, records required to be maintained pursuant to the NVRA are those used in ensuring the state's official list of individuals entitled

8

to vote is current and accurate. Project Vote v. Kemp, 208 F. Supp. 3d 1320, 1338 (N.D. Ga. 2016). According to the terms outlined in the MOU, Georgia's use of the Crosscheck lists is intended to do just that. Although Defendant insists that the Crosscheck lists do not fall under the category of documents anticipated by Congress in enacting the NVRA, he points to no authority that supports his contention.

The Fourth Circuit Court of Appeals emphasized the broad reach of the public disclosure provisions of the NVRA noting "the fact that [Section 8(i)(1)] very clearly requires that '*all* records be disclosed brings voter registration application materials within its reach.'" Project Vote/Voting for Am., Inc. v. Long, 682 F.3d 331 (4th Cir. 2012). The use of the word *all* "is a term of great breadth." Nat'l. Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 290 (4th Cir. 1998). This Court has also emphasized a broad interpretation of the documents required to be disclosed under the notice provisions of the NVRA. In Project Vote v. Kemp, the Court opined that:

> Limiting the disclosure requirement to a set of general process implementation records without the production of records to show the results of the processes and activities put into place would hinder the public's ability to 'protect the integrity of the electoral process' and to ensure voting regulation programs and activities are implemented in a way that accomplishes the purposes of the statute and are not executed in a manner that is 'discriminatory and unfair.'

208 F. Supp. 3d at 1340 (citing 52 U.S.C. § 20501).

The Court ultimately concluded that the documents in question (voter registration applications) were "unquestionably records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." Id. Where, as here, "the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004) (internal quotation marks omitted). Consistent with this line of rulings, the Court finds that the 2016 and 2017 Crosscheck lists also fall within the public disclosure provisions of the NVRA.

## III. Summary

The Court finds that summary judgment in favor of Defendant is inappropriate and that Plaintiffs are entitled to access to the 2016 and 2017 Crosscheck lists. Therefore, the Court now considers entering summary judgment in favor of Plaintiffs *sua sponte* pursuant to Federal Rule of Civil Procedure 56(f). As such, the Court **PLACES** Defendant on notice that it is considering entering summary judgment in favor of Plaintiff. See Burton v. City of Belle Glade, 178 F.3d 1175, 1203 (11th Cir. 1999).

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** Defendant's Motion for Summary Judgment. [Doc. 17]. Further, the Court **DIRECTS** Defendant, within thirty (30) days, to file a brief in opposition to entry of summary judgment in favor of

Plaintiffs. Plaintiffs shall have fourteen (14) days after Defendant's brief to file a reply. The Court **DIRECTS** the Clerk to submit this case to the undersigned if Defendant fails to file a brief in opposition of summary judgment within thirty (30) days of entry of this Order. Otherwise, the Court **DIRECTS** the Clerk to submit the case once the time for Plaintiffs to file a reply has lapsed.

**SO ORDERED**, this 4th day of February, 2020.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia